UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

—————————————————————X

HUGO LAROSA,

        Petitioner,

    –against–

**MEMORANDUM AND ORDER**
15–CV–07008 (JMA)

M. KIRKPATRIXK,

        Respondent.

—————————————————————X

**APPEARANCES:**

Hugo LaRosa
    *Pro Se* Petitioner

Thomas C. Costello
Suffolk County District Attorney's Office
Criminal Courts Building
200 Center Drive
Riverhead, NY 11901
    *For Respondent*

**AZRACK, United States District Judge:**

    Hugo LaRosa ("LaRosa"), proceeding pro se, petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254. LaRosa pled guilty to five counts of crimes related to sexual misconduct with his minor stepdaughter and is presently serving a sentence of seven years imprisonment followed by twenty years post-release supervision. In the pending petition, LaRosa asserts three grounds for habeas relief. Petitioner has also requested a stay in order to allow him to exhaust certain unexhausted claims and has filed a motion to amend his petition to add those unexhausted claims.

    For the following reasons, LaRosa's motions for a stay and to file an amended petition are DENIED and his petition is DENIED in its entirety.

# I.  BACKGROUND

## A. Pre-Trial Motion, Guilty Plea, and Sentencing

In 2011, LaRosa was charged with engaging in repeated sexual acts with his minor stepdaughter between 2006 and 2011.  Specifically, he was charged with one count of Engaging in a Course of Sexual Conduct against a Child, three counts of Rape in the Third Degree, and one count of Endangering the Welfare of a Child.  (Indictment, ECF No. 11 at 29-31).)[1]

On September 21, 2011, LaRosa's counsel made an omnibus motion requesting, inter alia, (1) discovery pursuant to N.Y. Crim. Pro. Law ("CPL") § 240.40; (2) inspection and release of the grand jury minutes and dismissal or reduction of the indictment pursuant to CPL § 210.20; and (3) suppression and exclusion of various pieces of evidence, including certain statements LaRosa allegedly made to his wife.  (ECF No. 11 at 33–50.)

The trial court decided the motion on September 26, 2011.  (Omnibus Order, ECF 62–63).)  The request seeking statutory discovery was granted to the limited extent that the prosecution was required to comply with CPL § 240.20.  (Id.)  The request seeking inspection of the grand jury minutes was granted to the limited extent that the court examined the minutes and found there was sufficient evidence for the indictment.  (Id. at 63.)  The application for release of these minutes was denied.  (Id.)

The trial court deferred ruling on defendant's suppression and evidentiary arguments, explaining that it would either schedule pre-trial hearings on those issues or, in the case of the statements to LaRosa's wife, would address that issue when the prosecution moved to admit that evidence at trial.  (Id.)

---

[1] Unless otherwise noted, all pin citations to record refer to the page number generated by the Court's ECF system and electronically stamped on the documents filed on ECF.

Prior to LaRosa's guilty plea, his counsel received discovery, including a medical report from the Child Advocacy Center (the "CAC Report") concerning an examination of the victim. (ECF No. 11 at 197, 208.) Although the CAC Report found no evidence of abnormalities during the victim's exam, the report goes on to state that this "does not negate the possibility of penetrating trauma." (ECF No. 11 at 191.) Additionally, DNA analysis, which was also turned over to the defense, linked semen found on a comforter in the victim's bedroom to LaRosa. (See ECF No. 11 at 210; Biological Sciences Report, ECF No. 27-1 at 24; Respondent's Mem. at 14 n. 33.)

On April 9, 2012, LaRosa pled guilty to all charges before Justice Barbara Kahn. (Plea Tr., ECF No. 11–18.) At the plea hearing, LaRosa's attorney indicated that LaRosa agreed to this plea because the court offered to impose a seven-year sentence, while the prosecution was not willing to reduce or dismiss any of the charges and was planning to recommend a fifteen-year sentence if LaRosa pled guilty. (Id. at 3–4.) LaRosa assured the court that he was making this plea voluntarily and of his own free will. (Id. at 12.) He further affirmed that, within the last 24 hours, he had not taken any drugs or medication that interfered with his ability to understand what was happening in court. (Id. at 8–9.) Finally, LaRosa stated that he was satisfied with the services provided by his attorney. (Id. at 5.)

LaRosa then allocuted to the crimes with which he was charged. He confessed that from September 2006 to June 8, 2008, he was living with a child, B.R., who was under thirteen years old. (Id. at 12–13.) He admitted that during this time he subjected B.R. to two or more acts of sexual conduct, including placing his penis inside of her vagina on three or more occasions. (Id.) He further admitted that he also resided with B.R. in October 2011. (Id. at 13–14.) Additionally, he stated that he had engaged in sexual intercourse with B.R. while living with her in 2010 and 2011, when she was under seventeen years old. (Id. at 14–16.) Finally, LaRosa admitted that there

were occasions between September 2006 and March 2011 in which he acted in a matter that was likely to be injurious to the physical, mental, or moral welfare of B.R., who was under seventeen years old, by subjecting her to a course of sexual conduct. (Id. at 16–17.)

On July 10, 2012, LaRosa was sentenced in accordance with his plea bargain to seven years imprisonment followed by twenty years post-release supervision for Engaging in a Course of Sexual Conduct against a Child. (Sentencing Tr., ECF No. 11 at 24–25.) For the rape charges, LaRosa was sentenced to four-year terms of imprisonment and ten years post-release supervision. (Id.) LaRosa also received a one-year sentence of imprisonment for Endangering the Welfare of a Child. (Id.) All sentences were ordered to run concurrently. (Id.)

**B. The Direct Appeal**

On April 11, 2014, LaRosa appealed his conviction to the Second Department of the New York Appellate Division. LaRosa's appellate counsel argued that LaRosa's sentence was unduly harsh and requested that the sentence be modified to the minimum of five years in the interest of justice. (Appellate Div. Br., ECF No. 11 at 70).) LaRosa also submitted a pro se supplemental brief in which he argued that: (1) his plea was not knowingly, intelligently, and voluntarily made; and (2) he received ineffective assistance of counsel on various grounds. (Suppl. Br., ECF No. 11 at 86–96).)

On April 19, 2015, LaRosa withdrew his pro se supplemental brief because he had determined that the majority of these issues were "unpreserved" for appellate review.[2] (Aff. Supp. Withdrawal of Suppl. Br., ECF No. 11 at 118.) As discussed infra, during the pendency of his

---

[2] LaRosa appears to have concluded that these claims could not be raised on direct appeal because they were based on facts that were outside of the trial record.

direct appeal, LaRosa filed a Motion to Vacate the Judgment of Conviction under CPL § 440.10, which raised the same grounds as the pro se supplemental brief.

On July 8, 2015, the Second Department affirmed LaRosa's sentence. (Order Affirming Sentence, ECF No. 11 at 85.)

On July 15, 2015, LaRosa requested leave to appeal the Second Department's decision. (Appellate Div. Order, ECF No. 11 at 275).) The New York Court of Appeals denied that request on October 1, 2015. (N.Y. Court of Appeals Order, ECF No. 11 at 278.)

On October 20, 2015, LaRosa sought reconsideration on the ground that the court had overlooked questions of ineffective assistance of appellate counsel. (Notice of Mot. for Re-Argument, ECF No. 11 at 280.) LaRosa claimed that he had asked appellate counsel to appeal on multiple other grounds, but counsel failed to do so. (Aff. Supp. Notice of Mot. for Re-Argument, ECF No. 11 at 283.) He also claimed that appellate counsel failed to "contact him with the issues to preserve on appeal" and did not provide him with copies of relevant documents.[3] (Id. at 283–288.) The New York Court of Appeals denied this request on December 22, 2015. (Order Den. Reconsideration, ECF No. 11 at 292.)

## C. First § 440.10 Motion

On January 12, 2015, LaRosa, proceeding pro se, filed a motion under CPL § 440.10 to vacate his conviction (the "first § 440.10 motion"). (Notice of 440.10 Mot., ECF No. 11 at 167–168.) In this motion, he alleged that: (1) his counsel provided ineffective assistance; (2) his plea was not knowingly, intelligently, and voluntarily made due to the influence of psychotropic

---

[3] It is not clear from LaRosa's reconsideration motion what issues he claimed appellate counsel failed to raise in his direct appeal other than a claim that his "waiver of appeal" was not entered knowingly and voluntarily. (ECF No. 11 at 287–88.) Although LaRosa's guilty plea waived his right to a jury trial and any defenses to the charges, LaRosa did not waive his right to appeal.

medication that he was taking at the time of the plea; (3) the prosecution violated <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), by withholding forensic DNA evidence and a medical report;[4] and (4) he was actually innocent.  (ECF No. 11 at 167–76.)

With respect to the claim of ineffective assistance, LaRosa asserted, in conclusory fashion, that his counsel: (1) failed to perform required pretrial functions, such as interviewing unspecified witnesses and pursuing forensic/scientific evidence; (2) failed to investigate the case or hire a private investigator; (3) failed to pursue available defenses and pressured LaRosa to take the plea offer; and (4) did not to advise LaRosa of his alternative legal options.  (Aff. Supp. 440.10 Mot., ECF No. 11 at 171–172.)  LaRosa also contended that "counsel's failure to present an argument on a myriad of issues ranging from DNA evidence to the complete lack of pre-trial investigation equate[d] to ineffective assistance of trial."  (<u>Id.</u>)  Additionally, LaRosa argued that, if his counsel was aware of the CAC Report, counsel further exhibited ineffectiveness by failing to present the report to LaRosa.  (<u>Id.</u> at 174.)  Finally, LaRosa asserted that although he had stated satisfaction with his attorney during the plea hearing, he only did so because his attorney instructed him that the judge would reject the deal if LaRosa did not answer yes to all questions.  (<u>Id.</u> at 172.)

In his <u>Brady</u> claim, LaRosa contended that "the prosecution lacked physical evidence to prove that any physical or sexual contact was conducted by the defendant, the only evidence offered was the . . . conflicting testimony of the defendant's step-daughter."  (<u>Id.</u> at 175.)  LaRosa claimed that the lack of physical and medical evidence "should be, on its own, enough to have the conviction reversed and remitted to Court."  (<u>Id.</u>)  LaRosa also asserted that he would not have pled guilty if he had been aware of the CAC Report.  (<u>Id.</u>)

---

[4] Although LaRosa's first § 440.10 motion refers to allegedly exculpatory "DNA evidence," LaRosa's papers suggest that this claim actually concerns the CAC Report.  The CAC report says nothing about DNA.  Although the prosecution obtained inculpatory DNA evidence, it had no occasion to introduce such evidence in light of LaRosa's guilty plea.

In response, the prosecution affirmed that a copy of the CAC Report was provided to the defense on September 9, 2011, seven months before LaRosa's guilty plea. (ECF No. 11 at 197, 208.) The prosecution further argued that the CAC Report was not exculpatory because it explicitly stated that "[t]he lack of findings does not negate the possibility of penetrating trauma" and because case law recognized that "sexual intercourse may be accomplished with penetration of the vulva or labia, 'even though the victim's hymen remains intact and there is no penetration into the vaginal canal.'" (Id. at 209 (citation omitted).) Finally, the prosecution explained that there was inculpatory DNA evidence in the form of a Biological Sciences Report released by the Suffolk County Crime Laboratory on February 2, 2012, two months before LaRosa's plea. (Id. at 210.) This report revealed that a DNA test conducted on a semen stain found on a comforter from the victim's bedroom matched the DNA from LaRosa's buccal swab, and "the probability of a randomly selected, unrelated individual having a DNA profile matching that obtained from the major component was approximately 1 in 7.70 sextillion for the United States population." (Id.; see also Biological Sciences Report, ECF No. 27-1 at 24.)

On March 9, 2015, Justice Kahn, of the County Court of Suffolk County, denied LaRosa's first § 440.10 motion. (Order Den. 440.10 Mot., ECF No. 11 at 212–213).) Justice Kahn determined that there was no evidence besides LaRosa's "self-serving" affidavit supporting his claims of ineffective assistance. Moreover, the court emphasized that counsel had in fact "secured a highly advantageous plea bargain," as LaRosa faced a much higher potential maximum sentence of twenty-five years in prison followed by twenty years of post-release supervision if convicted at trial. (Id. at 213.)

With respect to LaRosa's claim concerning the voluntariness of his plea, the court concluded that the "extensive colloquy regarding [LaRosa's] ability to both understand the nature

of the proceeding and whether he was entering into the plea voluntarily" belied his claim of incapacity. (Id.)

With respect to LaRosa's <u>Brady</u> claim, the court relied on the prosecution's affirmation indicating that the CAC Report had, in fact, been disclosed to the defense. (Id.) Finally, the court found that LaRosa had failed to include any evidence supporting his claim of actual innocence. (Id.)

On April 19, 2015, LaRosa requested leave to appeal from the Appellate Division, Second Department. (Mot. for Leave to Appeal (ECF 125–130).) On June 25, 2015, in an apparent effort to perfect this request for leave to appeal, LaRosa filed additional papers. (ECF No. 11 at 214–251.) On April 1, 2016, the Appellate Division denied LaRosa's request for leave to appeal. (Order Den. 440.10 Appeal, ECF No. 11 at 274).)

**D. The Instant Petition**

LaRosa filed a petition for habeas relief on November 28, 2015. He asserts the following grounds for relief:

> (1) "There is no DNA evidence that supported the allegations to the crimes that were logged [sic] against [him]. The only evidence the court and the People had in my case was testimony given to the police from the supposed victim, her mother, and victim's friend."
>
> (2) "Ineffective assistance of counsel, as the attorneys in my case denied to submit the facts to the court of my innocence, as per the DNA results, any further testings, or polygraph examination of victim and witnesses."
>
> (3) "Inadmissible evidence of hearsay by the victim and witnesses, as they lied on direct questioning and [coerced] statements given to the police and District Attorney in the case."

(Pet. at 6, 8, 9.)

In its memorandum of opposition, filed on August 22, 2016, Respondent argues that these claims are both unexhausted and not a basis to grant habeas relief. On September 7, 2016, LaRosa

filed a reply, arguing that his claims were exhausted. He also requested, in the alternative, that the Court grant a stay that would permit him to exhaust any unexhausted claims in state court. As part of this request, LaRosa informed the Court that he is from Peru and "understands very littler [sic] English let alone konowing [sic] the law concerning the court system procedures." (LaRosa Response, ECF No. 16 at 9.)

### E. Additional Filings in Federal and State Court

On June 12, 2017, LaRosa filed an additional application requesting a stay in this Court. On June 14, 2017, LaRosa filed another § 440.10 motion in state court (the "second § 440.10 motion"). (ECF No. 27.) Justice Khan denied that motion in an order dated November 28, 2017. (Id.) LaRosa never appealed the denial of the second § 440.10 motion. (See ECF Nos. 27, 34).

On April 2, 2018, LaRosa filed a motion to amend his petition to add claims raised in his second § 440.10 motion. (ECF No. 28.)

## II.    DISCUSSION

### A. Standards of Review

#### 1. Overview of AEDPA

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), to restrict "the power of federal courts to grant writs of habeas corpus to state prisoners." Williams v. Taylor, 529 U.S. 362, 399 (2000) (O'Connor, J., concurring). Under AEDPA, a district court will "entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To make that showing, the petitioner must satisfy three hurdles: (1) the

exhaustion of state remedies, (2) the absence of a procedural bar, and (3) the satisfaction of AEDPA's deferential review of state court decisions.  See 28 U.S.C. § 2254.

## 2. Exhaustion

Generally, a court cannot review a habeas petition unless the petitioner "has exhausted the remedies available" in state courts.  28 U.S.C. § 2254(b)(1)(A).  The exhaustion requirement is designed to provide state courts with the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Jackson v. Edwards, 404 F.3d 612, 619 (2d Cir. 2005) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).  Therefore, the petitioner must show that he fairly presented his federal claim to the highest state court from which a decision can be rendered.  Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 190 n.3 (2d Cir. 1982) (en banc).  Although the petitioner need not "'cite chapter and verse of the Constitution in order to satisfy this requirement,' he must tender his claim 'in terms that are likely to alert the state courts of the claim's federal nature.'"  Jackson v. Conway, 763 F.3d 115, 133 (2d Cir. 2014) (quoting Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011)).

Where the petition is a "mixed petition," containing both exhausted and unexhausted claims, the court can deny the unexhausted claims if they are plainly meritless.  See 28 U.S.C. § 2254(b)(2)  ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Ortiz v. Marshall, No. 08-CV-8815, 2009 WL 3170300, at *7 (S.D.N.Y. Sept. 30, 2009) ("Federal courts retain the discretion to deny a petition including unexhausted claims on the merits when it deems those claims to be patently frivolous.").

### 3. Procedural Default

A federal court will not review a habeas petition "when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" <u>Cone v. Bell</u>, 556 U.S. 449, 465 (2009) (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991)). For this reason, under the doctrine of procedural default, a federal court will not review "the merits of claims, including constitutional claims, that a state court declined to hear because the petitioner failed to abide by a state procedural rule." <u>Martinez v. Ryan</u>, 566 U.S. 1, 9 (2012). When a state court has dismissed a claim on such a procedural ground, the petitioner is procedurally barred from raising that claim in a § 2254 petition unless the petition can meet certain requirements explained below.

This procedural bar applies even if the state court addressed a claim's merits in the alternative, but decided that claim on independent procedural grounds. <u>Velasquez v. Leonardo</u>, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam); <u>see</u> <u>also</u> <u>Harris v. Reed</u>, 489 U.S. 255, 264 n.10 (1989) (observing that "a state court need not fear reaching the merits of a federal claim in an <u>alternative</u> holding" where the court explicitly invokes a procedural rule as an independent ground for its decision) (emphasis in original).

"The concepts of procedural bar and exhaustion often interact in an important way." <u>Dominguez v. Rock</u>, No. 12-CV-3269, 2016 WL 542120, at *5 (E.D.N.Y. Feb. 9, 2016). "If a § 2254 petitioner has failed to present a claim to a state court but can no longer do so—for example, if the time to file a state-court appeal has passed—then that claim is considered procedurally barred rather than unexhausted." <u>Id.</u> (citing <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 848 (1999)); <u>Lloyd v. Walker</u>, 771 F. Supp. 570, 574 (E.D.N.Y. 1991) (noting that "[w]hen a petitioner has not properly presented his claim to a state for consideration on the merits, but it is clear that the state court

would hold the claim procedurally barred, . . . the exhaustion requirement is satisfied," but, nonetheless, the petitioner is barred from litigating the merits of that claim in federal habeas proceedings) (internal quotation marks and citation omitted).

A petitioner may overcome a procedural bar by demonstrating either (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. To demonstrate cause, petitioner must establish that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule"—for example, that the factual or legal basis for a claim was not reasonably available to counsel or that "some interference by officials . . . made compliance impracticable." Murray v. Carrier, 477 U.S. 478, 488 (1986) (internal quotation marks and citations omitted). A petitioner may also satisfy the cause requirement by demonstrating that the failure of his attorney to comply with state procedural rules denied him constitutionally adequate representation. See Tavarez v. Larkin, 814 F.3d 644, 650 (2d Cir. 2016), cert. denied, 137 S. Ct. 106 (2016); Restrepo v. Kelly, 178 F.3d 634, 640 (2d Cir. 1999). A petitioner, however, generally cannot invoke this ground unless he first asserted an equivalent independent Sixth Amendment ineffective assistance claim in state court and exhausted his state-court remedies with respect to that claim. See e.g., Edwards v. Carpenter, 529 U.S. 446, 451–52 (2000).

As for the prejudice requirement, the petitioner must demonstrate that counsel's errors (or any other basis invoked by the petitioner to establish cause) not only "created a possibility of prejudice, but that they worked to his actual and substantial disadvantage . . . ." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original).

Even if a petitioner cannot establish cause and prejudice, a federal court may also excuse a petitioner's procedural default if he can show that a fundamental miscarriage of justice would result; in other words, "that he is actually innocent of the crime for which he has been convicted." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Schlup v. Delo, 513 U.S. 298, 321 (1995)). To prevail, the petitioner must put forth "new reliable evidence . . . that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup, 513 U.S. at 324.

### 4. AEDPA Standard of Review

If a state court reached the merits of a claim, a federal court may not grant a writ of habeas corpus unless the state court's adjudication of the claim either:

> [R]esulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> [R]esulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to]' and 'unreasonable.'" Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000). A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring). A decision involves "an unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. This standard does not require that all reasonable jurists agree that the state court was wrong. Id.

at 409–10.  Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'"  Jones, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

AEDPA "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."  Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 565 U.S. 65, 66 (2011) (per curiam)).  This standard is "difficult to meet."  White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quoting Metrish v. Lancaster, 133 S. Ct. 1781, 1786 (2013)), reh'g denied, 134 S. Ct. 2835 (2014).  A petitioner must show that the "state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Id. at 103.

Furthermore, a state court's determinations of factual issues are "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see also Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006).  A state court's finding of fact will be upheld "unless objectively unreasonable in light of the evidence presented in the state court proceeding."  Lynn, 443 F.3d at 246–47 (quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)).  Thus, a federal court may overrule a state court's judgment only if "after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated."  Williams, 529 U.S. at 389.

**5. Pro Se Status**

LaRosa "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated."  Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).  But, in light of his pro se status, the Court will construe his submissions liberally and interpret them "to

raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). However, LaRosa is not excused from "compliance with relevant rules of procedural and substantive law." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981) (per curiam) (internal quotation marks omitted)).

## B. Claims for Relief in LaRosa's Petition

### 1. Ineffective Assistance Claims

The second claim in LaRosa's petition asserts that he received ineffective assistance of counsel because his attorneys "denied to submit the facts to the court of [his] innocence, as per the DNA results, any further testings, or polygraph examination of victim and witnesses." (Pet. at 8.)

It is a close question whether LaRosa exhausted this claim. His claims of ineffective assistance in his first § 440.10 motion focused on counsel's failure to properly investigate and advise him of his legal options. LaRosa's first § 440.10 motion, however, also stated that counsel's "failure to present an argument on a myriad of issues," including DNA evidence, constituted ineffective assistance. (ECF No. 11 at 172.) LaRosa's first § 440.10 motion also asserted that defense counsel failed to present the CAC Report to him and that "if counsel was aware of such evidence this further shows the ineffectiveness of defendant's Attorney." (ECF No. 11 at 174.) Although the Court finds LaRosa exhausted this claim, it clearly fails on the merits.

"[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process." Tollett v. Henderson, 411 U.S. 258, 267 (1973). "The focus of federal habeas inquiry is the nature of the advice [of defense counsel concerning the plea] and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." Id. at 266. Thus,

when a criminal defendant pleads guilty, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Id. Under Tollett, a "petitioner's unconditional guilty plea waive[s] all claims of ineffective assistance of counsel relating to events prior to the guilty plea that did not affect the voluntariness of his plea." Vasquez v. Parrott, 397 F. Supp. 2d 452, 463 (S.D.N.Y. 2005). Thus, to the extent that LaRosa's petition seeks to raise ineffective assistance of counsel claims unrelated to the nature of his counsel's advice concerning the plea or the voluntariness of his plea, such claims must be denied.

Furthermore, even construing LaRosa's petition in the most liberal fashion possible, his ineffective assistance claims fail on the merits. In order to show ineffective assistance of counsel, LaRosa bears the burden to demonstrate that his defense counsel's performance was so inadequate as to violate his right to assistance of counsel under the Sixth Amendment to the United States Constitution. See Strickland v. Washington, 466 U.S. 668, 696 (1984). To prevail, he must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms;' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 688).

Under the first prong, the Court "must indulge a strong presumption that the counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. In evaluating counsel's effectiveness, the Court must keep in mind that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (quoting Rompilla v. Beard, 545 U.S. 374, 389 (2005)). Thus, the record must show that "counsel made errors so serious that

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Wilson v. Mazzuca, 570 F.3d 490, 502 (2d Cir. 2009) (quoting Strickland, 466 U.S. at 687). Under Strickland's second prong, a petitioner "must establish that he suffered prejudice—in this context, meaning that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Fulton v. Graham, 802 F.3d 257, 265 (2d Cir. 2015) (quoting Strickland, 466 U.S. at 694). "In the context of a guilty plea, Strickland's prejudice prong requires a defendant to demonstrate a reasonable probability that, 'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Munson v. Rock, 507 F. App'x. 53, 56 (2d Cir. 2013) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

AEDPA requires federal courts engaging in habeas review to grant state courts substantial "deference and latitude" when considering ineffective assistance of counsel claims that state courts have already rejected on the merits. Harrington v. Richter, 562 U.S. 86, 101 (2011). Thus, federal habeas review of a state court's rejection of an ineffective assistance of counsel claim on the merits is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, 123–24 (2009).

LaRosa cannot show that his counsel was ineffective. Defense counsel could not have possibly been ineffective for failing to present the allegedly exculpatory CAC Report (or any other evidence) to the court because there was no trial. Moreover, to the extent LaRosa's petition could be read to assert that his counsel was ineffective for not advising him to proceed to trial, that claim is utterly meritless. The CAC Report was not very probative for LaRosa's defense because—as the CAC Report itself noted—the absence of abnormalities in the report did not negate the possibility of penetrating trauma. Additionally, LaRosa's allegations concerning "further testings, or polygraph examination of victim and witnesses" are unsubstantiated by any evidence in the

record.  These allegations do not show that counsel acted unreasonably.  And, as Justice Kahn explained, LaRosa's attorney provided effective counsel in this case by "secur[ing] a highly advantageous plea bargain."  (Order Den. 440.10 Mot., ECF No. 11 at 213.)  Furthermore, even assuming for the sake of argument that defense counsel should have informed LaRosa of the CAC Report but failed to do so, there is not a reasonable probability that LaRosa, armed with knowledge of the CAC Report, would have rejected the plea agreement and proceeded to trial.  LaRosa received the benefit of a considerably reduced sentence, the CAC Report was not very probative to his defense, and the prosecution had other evidence, including witnesses and the DNA analysis, to establish LaRosa's guilt.

Finally, even if the Court were to liberally construe LaRosa's petition as seeking to raise all of the ineffective assistance of counsel claims set forth in his first § 440.10 motion, LaRosa would still have no viable ineffective assistance arguments.  The ineffective assistance allegations in LaRosa's first § 440.10 motion were conclusory and lacked evidentiary support.  For example, LaRosa maintained that defense counsel failed to interview unspecified witnesses, pursue unspecified defenses and "forensic/scientific" evidence, and failed to hire a private investigator.  (ECF No. 11 at 171–72.)  LaRosa, however, does not identify any exculpatory evidence or witnesses that such an investigation would have uncovered.  Similarly, LaRosa's conclusory allegations that defense counsel "just pressur[ed]" him to plead guilty and "did not properly advise Defendant of his legitimate alternative legal options" are insufficient to establish ineffective assistance of counsel.  (Id.)

Justice Kahn's rejection of LaRosa's ineffective assistance claims was neither contrary to, or an unreasonable application of clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts.

**2. The First and Third Claims in LaRosa's Petition**

The first claim in LaRosa's petition asserts:

> There is no DNA evidence that supported the allegations to the crimes that were logged against [him]. The only evidence the court and the People had in [his] case was testimony given to the police from the supposed victim, her mother, and victim's friend.

(Pet. at 6.)  The third, and final, claim in his petition alleges:

> Inadmissible evidence of hearsay by the victim and witnesses, as they lied on direct questioning and [coerced] statements given to the police and District Attorney in the case.

(Id. at 9.)  Both of these claims appear to be unexhausted as LaRosa failed to raise them in any state court proceeding.[5]  These claims are also plainly meritless.

LaRosa's complaints concerning the insufficiency of the evidence proving his guilt are non-issues in light of his guilty plea, which he does not squarely challenge in his habeas petition. See Tollett, 411 U.S. at 267 (explaining that once a criminal defendant pleads guilty, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea"); see also Plea Tr. at 6–8, ECF No. 11 at 6–8.  Under New York law, a guilty plea waives many rights and potential claims.  Although New York law contains certain limited exceptions to this rule, see People v. Hansen, 95 N.Y.2d 227, 230–31 (2000), LaRosa's first and third Claims—whether they are framed as sufficiency challenges or claims concerning the grand jury process—do not fall within these narrow exceptions.  See, e.g., id. at 374 ("Defendant in essence seeks a review of the fact-finding process engaged in by the grand

---

[5] In his first § 440.10 motion, LaRosa did assert, in the discussion of his Brady claim, that the prosecution lacked physical evidence to prove that he committed these crimes.  Even assuming for the sake of argument that the first claim in his petition seeks to raise this exhausted Brady claim, that claim fails on the merits.  Justice Kahn rejected LaRosa's Brady claim because the prosecution established that the allegedly suppressed material at issue was, in fact, provided to the defense.  Justice Kahn's rejection of the Brady claim was neither contrary to, or an unreasonable application of clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts.

jurors with respect to the videotaped remarks. While his constitutional right to be prosecuted on a jurisdictionally valid indictment survived the guilty plea, his right to challenge this evidence did not.").

To the extent that LaRosa is attempting to argue that his attorney should have counseled him to go to trial in light of purported weaknesses in the prosecution's case, such a claim is clearly meritless and is not supported by anything other than LaRosa's conclusory assertions about the prosecution's evidence.

As Respondent notes, LaRosa's third claim, which alleges that prosecution witnesses lied, could be construed as a challenge to the grand jury process that culminated in LaRosa's indictment, given that these witnesses presumably testified before the grand jury (and LaRosa raised a claim about the grand jury in his pre-trial motion before pleading guilty). Even construing this claim as such, it is substantively meritless.

A federal court may only review claims for habeas relief on the ground that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[C]laims of defects in state grand jury proceedings present questions of state, not federal, law, which are not cognizable on habeas review absent a showing of a due process violation." Nordahl v. Rivera, No. 08-CV-5565, 2013 WL 1187478, at *7 (S.D.N.Y. Mar. 21, 2013). Additionally, a conviction after either a trial or a guilty plea renders any alleged defects before the grand jury harmless. See Lopez v. Riley 865 F.2d 30, 32 (2d Cir. 1989) ("If federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in federal court."); Nordahl, 2013 WL 1187478, at *5 ("Because Petitioner pled guilty and now seeks to challenge the sufficiency of the evidence before the Grand Jury,

Petitioner's claim must be rejected."). Therefore, LaRosa's complaints regarding any alleged deficiencies in the grand jury process do not set forth a basis to grant his petition.

LaRosa also cannot show that there was a due process violation concerning the grand jury. LaRosa's vague and conclusory allegations are insufficient to show that the testimony in the grand jury was, in any fashion, improper. Notably, in response to his pre-trial omnibus motion, Justice Khan examined the grand jury minutes and found that the evidence presented was "legally sufficient to support the indictment and any lesser included offenses and that the Grand Jury was properly instructed on the law." (Omnibus Order, ECF No. 11 at 63.) LaRosa has not shown that this determination was contrary to, or an unreasonable application of clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts. Moreover, the conclusory factual allegations in his petition concerning the alleged flaws in the prosecution's evidence do not establish that due process was violated here.

Finally, to the extent that LaRosa's petition seeks to raise the actual innocence claim that he raised in the first § 440.10 motion, that claim is clearly meritless. As Justice Kahn concluded, LaRosa failed to offer any evidence to support his claim of actual innocence.

It is unclear whether a stand-alone claim of actual innocence may be asserted in a habeas motion. See Dist. Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 71 (2009) ("Whether such a federal right exists is an open question. We have struggled with it over the years, in some cases assuming, arguendo, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet."). However, even assuming for the sake of argument that such a right does exist, LaRosa certainly fails to meet the high standard that would be required. The standard for a stand-alone claim of actual innocence would invariably be a higher one than the already onerous standard for showing "gateway" actual

21

innocence to save an otherwise time-barred claim pronounced in <u>Schlup v. Delo</u>, 513 U.S. 298 (1995). <u>Schlup</u> and its progeny require that a petitioner "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" <u>House v. Bell</u>, 547 U.S. 518, 536–37 (2006) (quoting <u>Schlup</u>, 513 U.S. at 327); <u>see</u> <u>Rivas v. Fischer</u>, 687 F.3d 537, 541 (2d Cir. 2012) ("[T]he petitioner must demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.") (citation and internal quotation marks omitted). LaRosa cannot meet this high burden.

Accordingly, the first and third claims in LaRosa's petition are denied.

## C. **Motions for a Stay and to Amend the Petition**

For the reasons set forth below, LaRosa's motions for a stay and to amend his petition are denied.

### 1. Procedural History Relevant to LaRosa's Motions for a Stay and to Amend

On June 12, 2017, LaRosa filed a motion seeking a stay of this action so that he could exhaust certain claims in state court through a new § 440.10 motion. (ECF No. 13.) LaRosa's motion did not specify what claims he sought to exhaust. Respondent filed an opposition to the motion for a stay on June 26, 2017. (ECF No. 14.)

In an Order dated March 31, 2018, the Court noted that although "Respondent's argument against a stay appear[s] compelling," the Court, in an abundance of caution, wanted Respondent "to provide the Court with copies of all filings and court rulings concerning petitioner's recently filed § 440.10 motion by April 23, 2018." (Mar. 31, 2018 Order at 1, ECF No. 26.) The Court then stayed "resolution of the habeas petition until the Court receives these requested materials"

and indicated that "[u]pon receipt of those materials, the Court will address petitioner's request for a broader stay in order to exhaust." (Id.)

On April 2, 2018, the Court received a motion to amend from LaRosa dated March 26, 2018. (ECF No. 28.) In his motion to amend his petition, LaRosa raises multiple new claims. In his proposed amended petition, LaRosa claims that his rights under the Constitution were violated because:

> (1) he was illegally arrested without probable cause;
> (2) no accusatory instrument was filed in violation of the New York State Constitution;
> (3) there is no complaining witness;
> (4) a "True Bill of Indictment" was not filed; and
> (5) the prosecution fraudulently secured his guilty plea by introducing "evidence that do not exist" and suppressing a medical report.

(Id.) LaRosa's proposed amended petition also claims that he received ineffective counsel because:

> (1) defense counsel failed to dismiss for lack of jurisdiction when there was no "True Bill of indictment on file";
> (2) defense counsel failed to timely secure a medical report; and
> (3) defense counsel suppressed a DNA test that petitioner paid defense counsel to have performed.

(Id.)

On April 6, 2018, Respondent answered the Court's March 31, 2018 Order and provided the Court with a copy of: LaRosa's second § 440.10 motion dated June 14, 2017; Respondent's opposition to that motion; and Justice Kahn's November 28, 2017 order denying LaRosa's the motion. (ECF No. 27.) On March 25, 2019, the Court directed Respondent to provide the Court with any additional filings and court rulings concerning petitioner's second § 440.10 motion. Respondent informed the Court that there have been no subsequent filings or decisions regarding that motion. (ECF No. 34.)

### 2. Standards for Motions to Stay a Habeas Petition and to Amend a Petition

A district court has discretion to hold a habeas petition in abeyance to permit a petitioner to exhaust unexhausted claims, provided that the "petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that [he] engaged in intentionally dilatory litigation tactics." Rhines v. Weber, 544 U.S. 269, 278 (2005).

Motions to amend habeas petitions are governed by Rule 15 of the Federal Rules of Civil Procedure. Littlejohn v. Artuz, 271 F.3d 360, 363 (2d Cir. 2001); Fama v. Comm'r of Corr. Servcs., 235 F.3d 804, 815–16 (2d Cir. 2000); see 28 U.S.C. § 2242 (a habeas petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"). Under Rule 15(a)(2), a party may amend its pleadings upon consent of the opposing party or leave of the court, and "court[s] should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A court, however, "may deny a motion to amend where the proposed amendment would be futile." Watson v. Shanley, No. 19-CV-0275, 2019 WL 1410352, at *3 (N.D.N.Y. Mar. 28, 2019) (citing O'Hara v. Weeks Marine, Inc., 294 F.3d 55, 69 (2d Cir. 2002)).

### 3. Analysis

The new claims LaRosa seeks to raise are procedurally barred and meritless. Accordingly, the Court denies LaRosa's motion to amend and his motion for a stay.

#### i. Procedural Bars

LaRosa' claims are procedurally barred on various grounds.

To properly exhaust his claims, LaRosa was required to seek leave to appeal Justice Kahn's denial of his second § 440.10 motion. See Colon v. Sheahan, No. 13-CV-6744, 2016 WL 3926443, at *3 (S.D.N.Y. July 14, 2016) (explaining that in order to exhaust the denial of a § 440.10 motion, the defendant must seek leave to appeal from the Appellate Division). LaRosa, however, failed to

do so—in fact, LaRosa's 30-day window to seek leave to appeal the denial of that motion had already closed when LaRosa filed his motion to amend in April 2018. See Collazo v. Lee, No. 11-CV-1804, 2011 WL 6026301, at *3 (E.D.N.Y. Dec. 2, 2011) ("Under New York law, a defendant has thirty days to appeal a denial of a § 440 motion) (citing CPL § 460.10(4)(a)). Given LaRosa's failure to appeal Justice Kahn's November 28, 2017 decision, the claims raised in his second § 440.10 motion are now deemed to be exhausted, but procedurally barred. See Collazo, 2011 WL 6026301, at *3 (finding claim to be "exhausted, but . . . deemed procedurally barred from federal habeas review" when petitioner failed to seek to leave to appeal the denial of his § 440.10 motion).[6]

Additional procedural bars also stand in the way of some of LaRosa's new claims. Justice Kahn found that a number of LaRosa's claims were precluded because those claims either: (1) had to be raised on direct appeal; (2) had already been rejected on the merits; or (3) relied on newly

---

[6] There is a split of authority amongst district courts in the Second Circuit over whether the failure to seek leave to appeal the denial of a § 440.10 motion renders the claims therein to be deemed exhausted, but procedurally barred. See Small v. Diforilo, No. 12-CV-5583, 2016 WL 9737929, at *19 (S.D.N.Y. Sept. 9, 2016) (report and recommendation), adopted sub nom. Small v. Chappius, No. 12-CV-5583, 2017 WL 4342132 (S.D.N.Y. Sept. 28, 2017) (discussing split of authority). Even if LaRosa's claims were considered unexhausted and not procedurally barred, LaRosa's motion for a stay would be denied because LaRosa cannot show good cause for failing to exhaust these claims.

First, LaRosa's motion to stay failed to indicate why he delayed many months in pursuing his second § 440.10 motion in state court. LaRosa's delay is notable given that all the relevant facts underlying his claims appear to have been known to him either prior to his filing of a habeas petition or, in the case of his claim concerning the defense's DNA consultant, as of August 29, 2016. Second, and more importantly, although LaRosa requested a stay, his failure to appeal the denial of his second § 440.10 motion shows that he did not make diligent efforts to exhaust his claims in state court during the lengthy period of time in which his stay requests have been pending in this Court. Because LaRosa did not make diligent efforts to exhaust his state court remedies while his request for a stay was pending, he cannot show good cause for a stay.

Additionally, LaRosa' "pro se status and inexperience with the law" is insufficient to establish good cause. Morris v. Chappius, No. 18-CV-0718, 2019 WL 1198602, at *3 (N.D.N.Y. Mar. 14, 2019). Although the Court also recognizes that LaRosa is from Peru and understands very little English, those facts are insufficient, in light of the procedural history of this case, to show good cause. Despite those hurdles, LaRosa was able to file a second § 440.10 motion, but then simply failed to seek leave to appeal the denial of that motion. Also, there is no evidence in the record that LaRosa ever took any further steps to exhaust these claims. Furthermore, LaRosa's other pro se filings in state court illustrate his ability to litigate his claims. Thus, for all of the reasons set forth above, LaRosa cannot meet the "good cause" requirement for a stay. His request for a stay must also be denied because, as explained below, his claims are also procedurally barred and/or substantively meritless.

discovered evidence that could not be considered because, under CPL § 440.10(1)(g), vacatur based on newly discovered evidence is not available to a defendant who pleads guilty. (See, Nov. 28, 2017 Decision, ECF No. 27-3 (finding claims of "lack of jurisdiction with respect to both the indictment and the court in which the matter was heard" had to be raised on direct appeal and finding that claims concerning Brady material, grand jury minutes, and the voluntariness of the plea were precluded by CPL § 440.10(3)(b) because the court had previously rejected the claims on the merits).)

LaRosa cannot overcome any of these procedural bars because he cannot show cause, prejudice, or actual innocence.

### ii. LaRosa's New Claims are Substantively Meritless

None of the claims raised in LaRosa's second § 440.10 motion and proposed amended petition are meritorious. Respondent's June 26, 2017 letter, (ECF No. 14), and Justice Kahn's November 28, 2017 decision, set forth multiple reasons why these claims are substantively meritless. The Court finds all of those points to be persuasive and briefly addresses some of LaRosa's claims further below.

LaRosa's claim that defense counsel was ineffective for failing to have a report prepared by a defense-retained DNA consultant is meritless. As the retained DNA Consultant explained to LaRosa in an August 29, 2016 letter, it is common for defense attorneys not to request such a report because the defense may have to turn such a report over to the prosecution. (ECF No. 27-1 at 39.) The retained DNA consultant further indicated that he "analyzed and reviewed" the material provided by defense counsel, (id.), and there is no evidence in the record indicating that the results of the DNA Consultant's analysis, or the results of any subsequent DNA analysis, were favorable to LaRosa.

Also meritless are LaRosa's ineffective assistance claims concerning the comforter from which the inculpatory DNA evidence was recovered. Given the conclusory nature of LaRosa's allegations that defense counsel was ineffective for not seeking suppression of the comforter, LaRosa's ineffective assistance claim concerning the comforter clearly fails. There is nothing in the record to suggest that LaRosa's counsel had any basis to suppress the comforter. Nor is there any evidence indicating that defense counsel acted improperly, in any fashion, with regard to the comforter. By contrast, the record affirmatively shows that defense counsel provided effective assistance by securing a favorable plea for LaRosa.

LaRosa also alleges that defense counsel was ineffective for failing to raise various frivolous challenges to the indictment. (See ECF No. 27-1 at 3–7.) These ineffective assistance claims—as well as LaRosa's attempts to directly challenge jurisdiction and the indictment—are all patently meritless.

Finally, LaRosa's proposed amended petition alleges that the prosecution had the "Medical Report and the defense Attorney fail to timely secure." (ECF No. 28 at 11.) This appears to be a reference to LaRosa's ineffective assistance and Brady claims concerning the CAC Report. The Court has already addressed these claims in the context of LaRosa's current petition and has found them to be meritless. Therefore, although these two claims have been exhausted and are not procedurally barred, any amendment to reallege these claims would be futile.

For all of the reasons above, the Court denies LaRosa's motion to amend and motion for a stay.

### D.  **Remaining Issues**

There are two remaining issues that can be disposed of summarily.

### 1.  **LaRosa's Arguments that his Plea Was Not Knowing and Voluntary**

The Court notes that although both of LaRosa's § 440.10 motions argued that his plea was not knowing and voluntary, LaRosa did not advance this argument in either his original petition or in his proposed amended petition.  Accordingly, LaRosa cannot obtain habeas relief on that basis.  In any event, even if he had pursued such a claim in this Court, that claim would have been denied.

In his first § 440.10 motion, LaRosa argued that his plea was not knowing and voluntary because he was suffers from mental illness and was on medication at the time of his plea.  In support of his claim, he cited to two medical records, from February 2012 and June 2012 concerning the medication he was taking, and claimed, in conclusory fashion in his motion papers, that his attorney had pressured him to plead guilty and that he had previously turned down plea offers with sentences between 2.5 to 5 years.  (ECF No. 11 at 174.)  The medical record from February 2012 indicates that LaRosa was, at that time, on the pain medications Vicodin and Flexeril for his back pain and also on two medications for depression, one of which is "particularly sedating."  (ECF No. 11 at 183.)  However, the doctor who authored this record also indicates that LaRosa would be given Tylenol going forward for pain and that if something else if is necessary for his back pain, the doctor would "see if MH still wants him on the other meds."  (Id.)

Justice Kahn, who accepted LaRosa's plea on April 9, 2012, rejected the claim in the first § 440.10 motion that LaRosa's plea was not knowing and voluntary.  (Order Den. 440.10 Mot., ECF No. 11 at 213.)  Justice Kahn relied on the extensive colloquy at the plea hearing, which included LaRosa affirming that he was not taking any medications that would interfere with his

ability to understand the proceeding. (Id.) Her determination was neither contrary to, or an unreasonable application of clearly established Supreme Court precedent, nor was it based on an unreasonable determination of the facts.

In his second § 440.10 motion, LaRosa again raised this issue, and included certain additional records concerning his medication that were not included with his first § 440.10 motion. LaRosa's papers also suggest that his defense counsel was ineffective because he was aware of LaRosa's medication.

Justice Kahn's November 28, 2017 decision rejected LaRosa's argument that his plea was not knowing and voluntary, finding that this issue had previously been decided when LaRosa raised it in his first § 440.10 motion. Accordingly, LaRosa is procedurally barred from pursuing this claim in a habeas petition, and cannot show cause to overcome that bar. Finally, not only has LaRosa failed to show why these new records were not included in his first § 440.10 motion, but none of these medical records would alter the merits of LaRosa's claim. These records merely show that, at the time of his plea, he was still on medications for depression as well as Tylenol. (ECF No. 27-1 at 48.) LaRosa has failed to show that his plea was not knowing, voluntary, and intelligent. Relatedly, LaRosa's suggestion that the medical records show that his counsel was ineffective for allowing him to plead guilty is clearly meritless.

Thus, even if LaRosa had raised the above challenges concerning his plea in his habeas petition, they would have been denied.

**2. 28 U.S.C. § 2249**

In certain filings to this Court, LaRosa asserts that Respondent never provided a certified copy of the indictment and, thus, violated 28 U.S.C. § 2249, which provides:

> On application for a writ of habeas corpus to inquire into the detention of any person pursuant to a judgment of a court of the United States, the respondent shall promptly

file with the court certified copies of the indictment, plea of petitioner and the judgment, <u>or such of them as may be material to the questions raised</u>, if the petitioner fails to attach them to his petition, and same shall be attached to the return to the writ, or to the answer to the order to show cause.

(emphasis added.)

This argument is meritless. Respondent was not required to submit a certified copy of the indictment because it was not "material" to any of the issues raised in LaRosa's petition. In his proposed amended petition, LaRosa appears to argue that Respondent's failure to produce a "True Bill" in response to his petition is, somehow, evidence of a constitutional violation. (ECF No. 28 at 9.) This claim, like all of the points advanced by LaRosa, is meritless.

## III. CONCLUSION

For the following reasons, LaRosa's motions for a stay and to file an amended petition are DENIED and his petition is DENIED in its entirety.

A certificate of appealability shall not issue because LaRosa has not made a substantial showing that he was denied a constitutional right. <u>See</u> 28 U.S.C. § 2253(c)(2). I certify that any appeal of this Order would not be taken in good faith, and thus <u>in forma pauperis</u> is denied for the purposes of any appeal. <u>Coppedge v. United States</u>, 369 U.S. 438, 444–45 (1962). The Clerk of the Court is respectfully directed to mail a copy of this Order to LaRosa and to close this case.

**SO ORDERED.**

Dated: March 31, 2019
Central Islip, New York

_____/s/ (JMA)_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE